Filed 9/11/25  P. v. Mao CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SAVAAN MAO,<br><br>    Defendant and Appellant. | F087233<br><br>(Super. Ct. No. CF03902136)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Joshua G. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Michael A. Canzoneri and Eric L. Christoffersen, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

Defendant Savann Mao was convicted by no contest plea of first degree murder in 2004, and in 2005. was sentenced to 25 years to life in prison.  He committed the murder in 2002 when he was 15 years old.  He was found unfit for juvenile court.  !(CCT 36–38)!

In 2022, Mao petitioned for resentencing under Penal Code section 1172.6,[1] which limits accomplice liability for murder. The trial court found he had made a prima facie case for relief and set an evidentiary hearing. Before the evidentiary hearing, Mao moved to exclude his confession to law enforcement, which he made in 2003 when he was 16 years old, from being considered at the hearing. He contended the totality of the circumstances surrounding his confession showed that his waiver of his *Miranda*[2] rights was involuntary.

The trial court denied the motion without even considering it. Relying on *People v. Mitchell* (2022) 81 Cal.App.5th 575 (*Mitchell*), the court held that the Fifth Amendment right against self-incrimination does not apply in section 1172.6 proceedings, so by extension Mao could not move to exclude his confession. The trial court considered Mao's confession at the evidentiary hearing and found beyond a reasonable doubt that Mao acted with malice and was the actual killer. The trial court accordingly denied his petition.

Mao appeals from the order denying his petition for resentencing, claiming the trial court erred by denying his motion without even considering it. However, he does not even attempt to show how he was prejudiced by the trial court's refusal to consider the motion on its merits. His failure to show prejudice requires us to reject his claim, and we accordingly affirm the trial court's order denying his petition.

**BACKGROUND**

**I.       Section 1172.6**

To provide helpful context, we begin by explaining the resentencing scheme contained in section 1172.6.

Murder is the unlawful killing of a human with malice aforethought. (§ 187, subd. (a).) As relevant here, " '[f]irst degree murder is an unlawful killing with malice

---

[1]      Undesignated statutory references are to the Penal Code.

[2]      *Miranda v. Arizona* (1966) 384 U.S. 436.

2.

aforethought, premeditation, and deliberation.' " (*People v. Ocegueda* (2023) 92 Cal.App.5th 548, 557.)

To the end of ensuring a person's sentence is commensurate with the person's individual criminal culpability, Senate Bill No. 1437 (2017–2018 Reg. Sess.) limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Senate Bill No. 1437 added section 189, subdivision (e) (limiting application of the felony-murder rule) and section 188, subdivision (a)(3) (stating that "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime"). As amended by Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, these ameliorative changes to the law expressly apply to attempted murder and voluntary manslaughter.

Senate Bill No. 1437 also created a procedure, codified at section 1172.6, for a person convicted of murder, attempted murder, or voluntary manslaughter under the former law to be resentenced if the person could no longer be convicted of those crimes under the current law. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) A defendant commences that procedure by filing a petition containing a declaration that, among other things, the defendant could not presently be convicted of murder, attempted murder, or voluntary manslaughter under the current law. (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

At the prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) If a petition establishes a

3.

prima facie case for relief, the trial court must appoint counsel if requested, issue an order to show cause, and hold an evidentiary hearing. (§ 1172.6, subds. (b)(3), (c) & (d)(1).) At the evidentiary hearing, each party may present new evidence and the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under current law. (*Id.*, subd. (d)(3).)

## II. Initial Proceedings

### A. Charges

On July 10, 2003, Mao was charged in a consolidated complaint with codefendant Kana Uch. The two were charged with a single count of murder (§ 187, subd. (a)). The complaint also alleged firearm and gang enhancement allegations.

### B. Preliminary Hearing

The trial court conducted a preliminary hearing on August 6, 2003. Four witnesses testified at the hearing. Two were active duty Fresno Police Department officers, one was a retired Fresno Police Department officer, and one was an identification technician with the Fresno Police Department. Uch and Mao separately confessed to participating in the shooting, and the officer to whom they confessed testified at the hearing and related their statements. The following facts are from the four witnesses' testimony.

On May 28, 2002, in the early evening, Mao, Uch, and Jerry Ouch were hanging out in their apartment complex. The three of them were members of the Tiny Rascal Gang, styled as TRG. Uch's moniker was "Canine" and Mao's was "Blackout" or "Black." The three were talking about problems between TRG and their main rival, the Asian Boys, styled as ABZ. ABZ members were harassing female TRG members, and the three of them decided to "do something" about it. They decided they would target ABZ member Kimrath Seang, who had previously shot at Mao.

Mao went to Ring Rang, who Mao lived with, and obtained a TEC-22 pistol, which he gave to Ouch. Uch gave Mao his Smith and Wesson .357 revolver. The three

4.

then set out on foot to Seang's apartment complex, which was less than a quarter of a mile away.

They arrived at Seang's apartment complex and found him sitting outside on a platform. The three of them spread out, and words were exchanged like, "What's up?" and "What's up, dog?" Mao said to Seang, "What's up now? Whatcha going to do?" Seang remained seated, "acting cool" and smoking a cigarette. Uch then told Mao and Ouch "to go ahead and do their thing."[3] Mao started shooting at Seang, firing all four rounds that were loaded into the .357 revolver. Ouch began "shooting wildly," firing 10 shots from the TEC-22 pistol. Seang got up and ran toward an apartment and was shot just before he reached the door. The group of three ran back to their apartment complex and went to the washroom to wash off any gunpowder. They then parted from each other's company. The bullet that struck Seang punctured his lungs, causing his death.

Detective Albert Murrietta, who was retired by the time of the preliminary hearing, investigated the case. His investigation led him to Uch, who he interviewed at police headquarters on March 7, 2003. Uch initially denied involvement in the Seang shooting, but then admitted he was involved. Uch told Murrietta about how he, Mao, and Ouch were hanging around their apartment complex, discussing their problems with ABZ. Uch explained how the shooting happened—from the planning, to the shooting, to returning home.

Murrietta next interviewed Mao at headquarters on March 12, 2003. Murrietta testified that he read Mao his *Miranda* rights and that Mao said he understood his rights. Mao initially denied involvement, but then admitted involvement after listening to Uch's recorded confession. He gave "almost the same [story]" as Uch. He claimed, however, that the shooting was Uch's idea, and he felt forced to participate due to gang pressure.

---

**3** These were the words of the witness, retired police officer Albert Murrietta. Murrietta was the detective who interviewed Uch and Mao and heard their confessions. However, there is no indication whether Uch said these exact words to Mao and Ouch.

5.

He also did not want to be thought of as a coward by TRG members. Just before he and Ouch fired their guns, Uch said, "go, go, go," and Mao started shooting.

Mao and Uch were held to answer for the murder count and for firearm and gang enhancement allegations.[4]

### C.    Plea and Initial Sentencing

A first amended information was filed August 22, 2003, which conformed to the court's order holding Mao and Uch to answer. Mao pleaded no contest to first degree murder on July 15, 2004, in exchange for dismissal of all enhancement allegations and a sentence of 25 years to life.[5] At sentencing on October 19, 2005, the court sentenced Mao to 25 years to life.

## III.    Mao's Section 1172.6 Proceedings

In May 2022, Mao, representing himself, filed a section 1172.6[6] petition with the trial court. Mao used a form to prepare his petition which required him to check boxes to assert his basis for relief. Based on the boxes he checked, he alleged that he was convicted of murder under the natural and probable consequences doctrine, the felony–murder doctrine, or some other theory of murder under which malice is imputed to a person based solely on his participation in the crime. He also alleged that he could not now be convicted of murder because of changes to sections 188 and 189. The trial court appointed counsel for Mao, found he had made a prima facie case for relief, and issued an order to show cause.

---

[4]    They were held to answer for slightly different firearm enhancement allegations to reflect that Mao was a shooter but Uch was not.

[5]    The change of plea stated that the term of imprisonment "offered" by the People was 25 years to life but stated Mao would receive "sentencing consideration" if he testified for the People at Uch's trial. Uch ended up not going to trial.

[6]    When Mao filed his petition, the section was numbered 1170.95. But effective June 30, 2022, section 1170.95 was renumbered as section 1172.6. (Stats. 2022, ch. 58 (Assem. Bill No. 200) § 10.)

Before the evidentiary hearing, Mao moved to exclude his audio-recorded confession that he made to Murrietta. He argued that his wavier of *Miranda* rights was involuntary, citing a totality of the circumstances. He pointed to his age, poor performance in school, low intelligence, his request to speak to his mother during the interview, and his lack of experience with the criminal justice system. These factors, he contended, showed that he did not understand the rights he was giving up by speaking with Murrietta. Exhibits supporting the motion included the recording and transcript of the confession, the preliminary hearing transcript, and Mao's academic records.

The People opposed the motion. Citing a string of cases, including *Mitchell*, *supra*, 81 Cal.App.5th 575, they argued that the Fifth Amendment right against self-incrimination does not apply at an evidentiary hearing on a section 1172.6 petition as the hearing is neither a new trial nor a criminal prosecution.

In *Mitchell*, the trial court considered a parole hearing transcript in the evidentiary hearing on a section 1172.6 petition and denied the petition. (*Mitchell*, *supra*, 81 Cal.App.5th at p. 583.) The *Mitchell* petitioner maintained on appeal that the parole hearing transcript was protected by use immunity and based his argument on cases tied to the right against self-incrimination. (*Id.* at pp. 583, 588–589.) Relying on precedents, the appellate court affirmed, reasoning in part that a section 1172.6 petition is not a criminal prosecution, but an "ameliorative process," and thus "[m]any constitutional protections that characterize burdensome criminal prosecutions thus do not apply." (*Mitchell*, at pp. 588–589.) Among the protections petitioners do not enjoy is the "constitutional right against self-incrimination in the [section 1172.6] process."[7] (*Id.* at p. 589, italics omitted.)

---

[7] Counsel for the appellant in *Mitchell* even conceded at oral argument that there is no Fifth Amendment right against self-incrimination in section 1172.6 proceedings. (*Mitchell*, at p. 589.)

Alternatively, the People asserted that a consideration of the totality of the circumstances does not show that Mao's waiver of rights was involuntary.

The trial court, after hearing argument, denied Mao's motion to exclude his confession without even considering its merits. The court relied on *Mitchell* to hold that since Mao had no Fifth Amendment right against self-incrimination in the section 1172.6 proceedings, by extension he had no right to move to exclude his confession. The court set the matter for an evidentiary hearing.

At the evidentiary hearing in November 2023, the People relied on the first amended information; the preliminary hearing transcript; the exhibits introduced at the preliminary hearing, including Mao's confession to Murrietta; and the transcript of Mao's change of plea hearing. The defense presented no evidence.

After hearing argument from the parties, the court found that the People had proven beyond a reasonable doubt that Mao acted with malice aforethought and that he was the actual killer, and accordingly the court denied the petition. The court stated that it had listened to Mao's confession with the aid of the transcript, and also reviewed the preliminary hearing transcript and considered only the non-hearsay testimony.[8] The court said it had not considered Murrietta's statements or statements by Uch because it did not think it could do so. The court stated that it found Mao's confession to be reliable and not "coercive in any way," despite his young age, and that Mao's statements were "very clear about his involvement."

## DISCUSSION

Mao maintains on appeal that the trial court erred by refusing to even consider his motion to exclude his confession on the ground that his *Miranda* waiver was involuntary.

---

[8]     At the evidentiary hearing, the court may consider "evidence previously admitted at any prior hearing or trial that is admissible under current law." (§ 1172.6, subd. (d)(3).) But "hearsay evidence that was admitted in a preliminary hearing" under section 872, subdivision (b), must be excluded as hearsay unless it is admissible under another exception to the hearsay rule. (*Id*., subd. (d)(3).)

However, Mao does not even attempt to show prejudice from this alleged error, which is fatal to his claim.

Mao's argument begins with section 1172.6, subdivision (d)(3), which provides that the "admission of evidence in the [resentencing] hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." Mao contends this establishes that the Evidence Code governs the admission of all evidence at a section 1172.6 evidentiary hearing. Mao then points to Evidence Code section 1204, which states that a "statement that is otherwise admissible as hearsay evidence is inadmissible against the defendant in a criminal action if the statement was made … under such circumstances that it is inadmissible against the defendant under the Constitution of the United States or the State of California." He asserts that Evidence Code section 1204, as it applies in the section 1172.6 context, "grant[s] [a petitioner] the statutory right to seek the suppression of a confession under *Miranda* in the resentencing proceeding that had not been previously admitted in support of his conviction." He states that his confession was not admitted at any prior hearing, even though Murrietta related his confession at the preliminary hearing without objection. He contends *Mitchell*'s holding should not be followed because it did not consider the interplay of Evidence Code section 1204 and Penal Code section 1172.6.

Mao contends the trial court's error was not harmless. As his claim of error is based on a provision of the Evidence Code, the state law standard of prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818 applies. (*People v. Triplett* (2020) 48 Cal.App.5th 655, 663.) Under that standard, an error is prejudicial "only if, after an examination of the entire cause, it is reasonably probable that [the appellant] would have obtained a more favorable result in the absence of the error." (*Ibid.*) The appellant has the burden of demonstrating prejudice under this standard. (*Ibid.*)

9.

To show prejudice in this context, Mao faces a two-pronged burden. First, he must demonstrate a reasonable probability that, had the trial court considered the merits of his motion, it would have found his confession flowed from an involuntary *Miranda* waiver and was thus inadmissible at the evidentiary hearing. Second, even if the confession were excluded, he must then show a reasonable probability that the remaining evidence would have been insufficient for the People to meet their burden of proving his ineligibility for resentencing beyond a reasonable doubt. Mao addresses only the second prong.

He asserts that his confession was the only evidence that supported the trial courts finding that he acted with malice, and he thus argues that if the trial court grants his motion to exclude his confession on remand, "nothing will be left to satisfy the prosecution's burden, and [he] will be entitled to resentencing." As the People point out, the problem is that he does not even try to explain how there is a reasonable probability the motion would have been granted had the trial court considered it. His failure to show prejudice dooms his claim.

## **DISPOSITION**

The trial court's order denying defendant's petition for resentencing is affirmed.

DE SANTOS, J.

WE CONCUR:

DETJEN, Acting P. J.

PEÑA, J.

10.